Larry R. ANDERSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 504, 1995.

Supreme Court of Delaware.

Submitted: April 23, 1996.
Decided: May 10, 1996.

John M. Willard, Wilmington, for Appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for Appellee.

Before VEASEY, C.J., WALSH and HARTNETT, JJ.

PER CURIAM:

In this appeal, we are asked to determine whether the failure of the State Chemist to calibrate within a thirty-day period an intoxilyzer device used to test the blood alcohol concentration of persons suspected of driving under the influence of alcohol renders inadmissible at trial the evidence obtained by that device. Defendant below-appellant, Larry R. Anderson ("Anderson"), contends that the Superior Court erred by admitting the results of Anderson's intoxilyzer test into evidence where the device had not been calibrated for a period of thirty days.

In affirming the conviction, we hold that there is no bright-line rule requiring the State to show calibration of an intoxilyzer device every thirty days as a predicate to admitting the results of the intoxilyzer test into evidence. Rather, we hold that the calibration must be conducted within a reasonable temporal proximity in order to be admissible, and the extent of the temporal proximity or remoteness would normally go only to the weight to be ascribed to this evidence, not its admissibility. Accordingly, we **AFFIRM** Anderson's conviction for Driving Under the Influence in contravention of

21 *Del.C.* § 4177(a), but on different grounds from that on which the Superior Court predicated its decision.

## I. Facts

On November 26, 1994, at approximately 11:30 p.m., Anderson was stopped by Officer Paul William Parsons of the Rehoboth Beach Police Department in connection with a routine traffic infraction. Upon encountering Anderson, Officer Parsons detected an odor of alcohol, observed that Anderson's speech was slurred, and also observed that he appeared confused. Officer Parsons administered field sobriety tests and concluded that Anderson had been operating his vehicle under the influence of alcohol. Accordingly, Anderson was taken into custody and an intoxilyzer device was used to determine Anderson's blood alcohol level. The intoxilyzer revealed that Anderson's blood alcohol concentration was .14 percent, .04 percent above the level allowed by section 4177.

## II. Disposition in the Court of Common Pleas and the Superior Court

Anderson was charged with Driving Under the Influence, and his case proceeded to a bench trial in the Court of Common Pleas. At trial, the State sought to introduce the intoxilyzer results into evidence as part of its case-in-chief. To this end, the State demonstrated that the intoxilyzer had been tested and certified as working properly on November 14, 1994, thirteen days before Anderson's arrest and testing. The State also showed that the intoxilyzer was again tested and certified as working properly on December 14, 1994, eighteen days after Anderson's test.

Anderson objected to this evidence on the ground that the two calibrations of the intoxilyzer device had not occurred within a thirty-day period. To support his assertion that the test results were inadmissible, Anderson relied on a Superior Court bench ruling issued in the case of *State v. Peck*, Del.Super., Cr.A. No. 93–070290A (Sept. 1, 1993). Anderson's contention was that *Peck* required calibrations *within thirty days* in order for the evidence to be admissible. This contention was rejected by the Court of Common Pleas which held that the intoxilyz-

er need not be calibrated every thirty days, but must be calibrated within reasonable temporal proximity of the defendant's test. The Superior Court, sitting as an intermediate appellate court, affirmed Anderson's conviction but disapproved of the Court of Common Pleas' holding that calibration of the intoxilyzer within a reasonable time of the defendant's test was sufficient.

## II. Calibration of the Intoxilyzer Device

The Superior Court held that calibration must occur monthly and that this condition was met in the case at bar. We affirm Anderson's conviction, but hold that no bright-line rule exists requiring calibration either monthly or every thirty days. If there is to be a bright-line rule requiring monthly testing of the intoxilyzer for admissibility purposes, that rule must, of necessity, come from the General Assembly. Section 4177 makes no mention of the frequency of calibration required for the intoxilyzer results to be admissible.

■ Failure to test the device for an unreasonably extended period of time would render the evidence unduly prejudicial as compared to its probative value. Under these circumstances, Delaware Rule of Evidence 403 would allow the trial court to bar its introduction. This analysis must be on a case-by-case basis. In the absence of a statute prescribing precise rules of admissibility, the trial court may consider the frequency of calibration as a factor bearing on admissibility only if the offer of proof is found to be unreliable because the temporal proximity of the calibration is too remote to be reasonable under the circumstances of the case. If this reasonableness threshold for admissibility is met, the extent of the temporal proximity or lack of it goes only to the weight to be ascribed by the trier of fact to evidence gathered from the intoxilyzer device.

Prior case law of this Court is in accord with this result. As we held in *McConnell v. State*, Del.Supr., No. 293, 1993, 1994 WL 43751, Holland, J. at 3 (Feb. 3, 1994) (ORDER), "[i]t is well-established in Delaware that the prerequisite to introducing the result of an intoxilyzer test into evidence is to

present the certifications of the State Chemist that the intoxilyzer machine was operating accurately before and after testing the breath of the defendant on trial" (citing *Best v. State,* Del.Supr., 328 A.2d 141 (1974)). We have found no precedent of this Court purporting to state a bright-line rule. Moreover, we do not construe *Peck* as establishing such a rule for all cases. The ruling in *Peck* was case-specific, but may have been read subsequently as standing for a broader principle. To the extent that *Peck* may be construed to be at odds with the decision we now reach, it is overruled.

## IV.   Conclusion

Based on the preceding discussion, we **AF-FIRM** Anderson's conviction for Driving Under the Influence in contravention of 21 *Del.C.* § 4177(a).