# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr.A. No. 1412007625 |
| | ) | |
| | ) | |
| JOHN M. HANNON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: December 3, 2015
Decided: January 19, 2016

Rebecca Song, Esquire
Office of the Attorney General
820 North French Street
Wilmington, DE 19801
*Attorney for the State of Delaware*

James M. Stiller, Jr., Esquire
Schwartz & Schwartz
1140 South State Street
Dover, DE 19901
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION IN LIMINE

On December 12, 2014, following a police investigation of a two-car motor vehicle accident, Defendant John M. Hannon ("Hannon") was arrested for Driving Under the Influence ("DUI") in violation of 21 *Del. C.* § 4177(a)(1).[1] On April 28, 2015, Hannon noticed the present Motion *in Limine* (the "Motion"), challenging the admissibility of the results of a blood test performed on Hannon. Defendant asserts that the results are "relevant and admissible only if the sample of breath or blood is taken within four hours of driving."[2]

---

[1] 21 *Del C.* § 4177 will be referred to as the DUI statute.
[2] Def.'s Mot. p 2.

On December 3, 2015, the Court held a hearing on the Motion. During the hearing, Hannon argued that the language of 21 *Del. C.* § 4177(g) is unconstitutionally vague, and that allowing the State to admit into evidence the results of a blood test taken more than four hours after a defendant is allegedly known to have driven a vehicle while under the influence of alcohol violates a defendant's due process rights and contradicts the prohibitory language of 21 *Del. C.* §§ 4177(a)(5) and (g). At the conclusion of the hearing, the Court reserved decision.[3]

Hannon's constitutional arguments notwithstanding, a Motion *in Limine* is distinguishable from a Motion to Suppress in that the latter is "grounded in constitutional right."[4] Therefore, the Court will only address Hannon's arguments with respect to the admissibility of the blood test as it relates to the Delaware Rules of Evidence ("D.R.E.") and the DUI statute.[5] This is the Court's Decision on Hannon's Motion *in Limine*.

## FACTS

On December 12, 2014, Trooper A. Johnson ("Trooper Johnson") of Troop 6 of the Delaware State Police was dispatched to a reported motor vehicle accident in the vicinity of the intersection of Limestone and Paper Mill Roads in New Castle County. Upon arrival, Trooper Johnson made contact with Hannon, who informed Trooper Johnson that the driver of a second vehicle drove onto the right shoulder of the road, and that when the second driver returned to the right-hand lane, his vehicle clipped the front end of Hannon's vehicle. During his initial

---

[3] Although the Court gave the parties the opportunity to provide supplemental briefing, the parties declined to provide such briefing.

[4] *State v. Grivas*, 1997 WL 127005, at *2 (Del. Super.) (citing *Gendron v. Pawtucket Mutual Insurance Co.*, 409 A.2d 656, 659 (1979); *United States v. Raddatz*, 447 U.S. 667 (1980).

[5] Even if this Court were to address Hannon's arguments as to the constitutionality of the DUI statute, it would not change the outcome of this Motion. In *State v. Baker* the Delaware Supreme Court declared a previous form of section 4177(a)(5) unconstitutional. 720 A.2d 1139, 1141 (Del. 1998). Subsequently, the State Legislature remedied the constitutional violations. The Superior Court revisited these issues in *DiSabatino v. State*, when it held that the subsequent amendments to section 4177 were constitutionally sound. 808 A.2d 1216, 1230 (Del. Super. Ct. 2002). The Motion before the Court fails to raise any meritorious arguments as to the constitutionality of the DUI statute that were not already addressed by the *Baker* or *DiSabatino* courts. Accordingly, the Court must conclude that no meritorious arguments are raised on the issue.

interaction with Hannon, Trooper Johnson detected an odor of alcohol coming from Hannon's vehicle.

After clearing the accident scene, Trooper Johnson began investigating Hannon for a suspected DUI. As part of the investigation, Hannon performed and failed various standardized field sobriety tests. Trooper Johnson also administered a portable breath test, which indicated the presence of alcohol, at which point Trooper Johnson arrested Hannon for suspicion of DUI. Initially, Hannon consented to a blood draw, but later withdrew his consent. After Hannon withdrew his consent, Trooper Johnson acquired a warrant so that he could obtain a blood sample from Hannon. Ultimately, Trooper Johnson obtained a blood sample four hours and thirty-nine minutes after Hannon had driven his vehicle.

## LEGAL STANDARD

Pursuant to D.R.E. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6] "All relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable in the courts of this State."[7]

### A. Delaware's DUI Statute

Pursuant to Section 4177(g) of Title 21 of the Delaware Code, in prosecutions for a violation of section 4177(a):

> [E]vidence establishing the presence and concentration of alcohol or drugs in the person's blood . . . shall be relevant and admissible. Such evidence *may* include the results from tests of samples of the person's blood . . . taken within 4 hours after the time of driving or *at some later time*.[8]

---

[6] D.R.E. 401.
[7] D.R.E. 402.
[8] 21 *Del. C.* § 4177(g) (emphasis added).

In part, Section 4177(a) states that no person shall drive a vehicle:[9]

(1) When the person is under the influence of alcohol; [or]

(5) When the person's alcohol concentration is, within 4 hours after the time of driving .08 or more[.] . . . [A] person is guilty under this subsection, without regard to the person's alcohol concentration at the time of driving, if the person's alcohol concentration is, within 4 hours after the time of driving .08 or more and that alcohol concentration is the result of an amount of alcohol present in, or consumed by the person when that person was driving.[10]

Section 4177(a)(5) provides that proof of a BAC of .08 or greater within four hours of driving is sufficient evidence to establish that the driver was guilty of a DUI. This provision is commonly referred to as a DUI *per se* provision. In contrast, section 4177(a)(1) allows the State to pursue a DUI conviction on evidence other than a BAC of .08 or greater within four hours of driving. This is commonly referenced as a DUI general impairment provision.

Since Hannon has been charged only with violating section 4177(a)(1) for general impairment, the sole issue before the Court is whether the language of section 4177(g)—when considered in conjunction with DUI *per se* section 4177(a)(5)'s language—prohibits the admission into evidence, to prove general impairment, the results of a blood test obtained outside the statutorily-created four-hour window. This issue is largely one of first impression; therefore, the Court will look to other jurisdictions with similar statutes for guidance.[11]

**B. Foreign Jurisdictions' DUI Case Law**

Pursuant to North Dakota's DUI statute, a person "may not drive or be in actual physical control of any vehicle"[12] if: (a) that person has a .08 BAC within two hours of driving (the "North Dakota DUI *per se* statute"); or (b) "that person is under the influence of intoxicating

---

[9] The Court will refer to §§ 4177(a)(1) and (a)(5) as the general impairment and DUI *per se* statutes, respectively.
[10] 21 *Del. C.* § 4177(a).
[11] Although few Delaware cases address the admissibility of a chemical test obtained outside the four-hour window, those that do are either non-binding, occur in the DUI *per se* as opposed to the general impairment context, or both. The Court addresses these opinions *infra*.
[12] N.D. CENT. CODE ANN. § 39-81-01(1)(a), (b) (WEST 2015).

4

liquor" (the "North Dakota general impairment statute").[13]  Courts in North Dakota have consistently permitted the use of blood tests taken beyond the two-hour window set forth in North Dakota's DUI *per se* statute as evidence to prove a violation of North Dakota's general impairment statute.[14]

In *City of Grand Forks v. Soli*, a defendant appealed his DUI conviction for violation of North Dakota's general impairment statute, arguing that the trial court erred by admitting into evidence, in contravention of the applicable DUI *per se* statute's two-hour rule, the results of a blood test taken more than two hours after the defendant drove.[15]  The defendant contended that N.D. Cent. Code Ann. § 39-20-07(5) (the "North Dakota fair administration statute"), which conditions chemical test admissibility on the prosecution demonstrating that chemical tests were "properly obtained" and "fairly administered," impliedly incorporates into its "fairly administered" criterion a requirement of strict compliance with the two-hour rule.[16]  The defendant reasoned that since the North Dakota DUI *per se* statute imposed a two-hour rule, the North Dakota fair administration statute adopts that rule and incorporates it into North Dakota's general impairment statute.[17]  The Supreme Court of North Dakota disagreed, and affirmed the conviction, holding that the test results were admissible.[18]  Although the test was inadmissible to prove a violation of the North Dakota DUI *per se* statute, the court found that the test results "may be sufficient evidence for the trier of fact to convict a defendant for violating [the North

---

[13] *Id.*

[14] *City of Grand Forks v. Soli*, 479 N.W.2d 872 (N.D. 1992); *North Dakota v. Miller*, 530 N.W.2d 652 (N.D. 1995).

[15] 479 N.W.2d 872, 873 (N.D. 1992).

[16] *Id.* at 875.

[17] *Id.*

[18] *Id.*

Dakota general impairment statute]."[19] Furthermore, the court decided that it "will not incorporate a time limit that the Legislature has not chosen to require."[20]

Similarly, in *North Dakota v. Miller*, in an appeal from a general impairment conviction, the Supreme Court of North Dakota deemed the results of a blood test taken approximately nine hours after a defendant drove his vehicle to be relevant and admissible.[21] The court affirmed the general impairment conviction, echoing its reasoning in *Soli*; the court noted that although inadmissible to prove a violation of the North Dakota DUI *per se* statute, a blood test taken later than the two hour time period after which a defendant drove still may be used "to convict a defendant for violating [the North Dakota general impairment statute]."[22]

Generally, in assessing whether a delay in chemical testing was reasonable, courts will look to the causes of the delay.[23] In *Montana v. Hala*, a defendant who appealed his DUI conviction argued that a blood draw conducted over eight hours after the act of driving was not in accord with a statutorily imposed reasonableness requirement.[24] The Montana DUI statute provided that chemical test results will give rise to certain presumptions so long as a chemical test is "taken within a reasonable time after the alleged act."[25] The Supreme Court of Montana held that a blood test, taken approximately eight hours after a defendant allegedly drove his vehicle under the influence of alcohol, was administered within a reasonable time and therefore was admissible.[26] In making this determination, the court considered it significant that the circumstances surrounding the accident (and not the investigating officer) precipitated the nine-

---

[19] *Id.*
[20] *Id.*
[21] *Miller*, 530 N.W.2d 652 (N.D. 1995).
[22] *Id.*
[23] *See, e.g. Montana v. Hala*, 358 P.3d 917 (Mont. 2015).
[24] *Id.* at 918.
[25] MONT. CODE. ANN. § 61-8-401(4) (2015).
[26] *Hala*, 358 P.3d 917.

hour delay.[27] Other courts have also looked to specific facts of the accident or DUI investigation when determining whether chemical test results are admissible.[28] Indeed, courts have often held that the results of chemical tests administered outside a statutorily mandated timeframe are nonetheless admissible, albeit as evidence to be given diminished weight proportionate to the degree of delay.[29]

After a diligent search of case law from foreign jurisdictions, this Court was unable to locate an instance where, because of delay alone, a court has unqualifiedly ruled a chemical test result inadmissible to prove a DUI in a general impairment-based prosecution. Where courts have held untimely chemical test results as inadmissible, such evidence was either: (1) inadmissible to prove a DUI *per se* violation; or (2) inadmissible due to a lack of sufficient extrapolation evidence correlating a defendant's BAC level at the time of testing to BAC levels when he or she allegedly drove under the influence of alcohol.[30]

---

[27] *Id.* at 920.

[28] *The Village of Bull Valley v. Winterpacht*, 968 N.E.2d 160, 163 (Ill. App. Ct. 2012) ("Matters of delay between driving and testing go to weight of evidence and must be viewed in light of circumstances surrounding the arrest"); *Pennsylvania v. Dye*, 2015 WL 7576104 at *3 (Pa. Super. Ct. 2015) (good cause to admit test results despite two hour rule violation where Commonwealth establishes context for blood draw delay and where distance and investigations explain delay).

[29] *North Carolina v. Patterson*, 708 S.E. 2d 133, 137 (N.C. Ct. App. 2011) (time elapsed between operating motor vehicle and blood test goes to weight given to results, not admissibility) (quoting *State v. George*, 336 S.E.2d 93, at 95 (N.C. Ct. App. 1985)); *Pennsylvania v. Williams*, 871 A.2d 254, 265 (Pa. Super. Ct 2005) (amount of time between driving and blood sample not dispositive of admissibility in prosecution for general impairment, only affects the weight of the evidence); *Texas v. Esparza*, 355 S.W.3d 276, 283 (Tex. Crim. App. 2011) (breath test results generally admissible at trial even if administered several hours after offense because positive result tends to indicate a defendant drank alcohol on day in question).

[30] *See New Mexico v. Hughey*, 119 P.3d 188 (N.M. Ct. App. 2005) (affirming trial court's granting of defendant's motion to exclude. State's expert's testimony too vague for trier of fact to find meaningful nexus between the test results and BAC at the time of driving), *rev'd* 163 P.3d 470 (N.M. 2007); *Ohio v. Ross*, 2008 WL 1113365 (Ohio Ct. App. 2008) (holding that breath test inadmissible under DUI *per se* theory, but may have been admissible to prove DUI on general impairment theory); *Holding v. Oklahoma*, 685 P.2d 403 (Okla. Crim. App. 1984) (holding breathalyzer test results inadmissible to prove DUI for purposes of misdemeanor manslaughter prosecution because test not conducted within two hours of arrest); *Stewart v. Texas*, 103 S.W.3d 483 (Tex. App. 2003) (reversing trial court's decision to admit breath test unaccompanied by suitable expert testimony connecting BAC at the time of driving to results of later breath test) *rev'd en banc* 129 S.W.3d 93 (Tex. Crim. App. 2003) (holding breath test results relevant even without expert testimony).

## C. Delaware's DUI Case Law

In his Motion Defendant relies primarily upon the holding in *Fiori v. State.*[31] In *Fiori*, a defendant was convicted of DUI *per se* in this Court and subsequently appealed his conviction to Superior Court on the ground that the State failed to prove that the defendant drove within four hours of the chemical test.[32] The *Fiori* defendant had been involved in a single car accident.[33] When police arrived at the scene at approximately 5 a.m.,[34] the defendant admitted to drinking, and the police found that the defendant had glassy, bloodshot eyes, and slurred speech.[35] The defendant was arrested for DUI at 6:37 a.m., and was given an intoxilyzer test which yielded a result of .122.[36] The *Fiori* court held that the test was admissible because the trial court had sufficient evidence to conclude that the defendant had driven his vehicle within four hours of the test.[37] In reaching this conclusion, the court reasoned that the relevancy of the test was conditioned upon its being administered within four hours of the time the defendant last drove, and that the circumstantial evidence supported the trial court's finding.[38] In dicta, the court interpreted section 4177(g) as standing for the proposition that a chemical test is relevant and admissible *only if* the test is taken within four hours of driving, thus creating the so-called four-hour rule.[39]

Subsequently, this Court applied the four-hour rule in *State v. Foskey*. In *Foskey*, this Court found that the results of a blood draw were inadmissible because the State failed to establish beyond a reasonable doubt that the test was administered within four hours after a

---

[31] Def.'s Mot. p.2.
[32] *Id.*
[33] *Fiori v. State*, 2004 WL 1284205 (Del. Super. May 26, 2004).
[34] *Id.* at *1.
[35] *Id.*
[36] *Id.*
[37] *Id.* at *5.
[38] *Id.* at *3.
[39] *Id.* at *2.

defendant was driving.[40] In *Foskey*, the defendant was transported to the hospital due to injuries he sustained in a two-car accident.[41] While at the hospital the defendant admitted to officers that he had been drinking.[42] At that time, the investigating officer noticed that the defendant exhibited an odor of alcohol and bloodshot eyes, and requested that the nurse conduct a blood draw.[43] Subsequently, the defendant was charged with violating the DUI *per se* statute.[44] In suppressing the test results, the *Foskey* court cited to *Fiori*, noting that a court may only admit a test if the "State foundationally establishes" that the blood draw was taken within four hours after the defendant was driving.[45]

The Superior Court revisited the DUI statute's language in *State v. Baker*. In *Baker*, the Superior Court denied a defendant's motion to suppress in a Letter Memorandum.[46] The court held that an allegedly untimely blood test was admissible, reasoning that pursuant to section 4177(g), the test was "not objectionable simply because it *might* have been administered more than four hours after [the] [d]efendant was driving."[47] In drawing this conclusion, the court reasoned that "nowhere does the statute expressly demand" that a defendant's blood must be tested within four hours,[48] and surmised that "as long as the test, itself, is regular . . . it does not matter how long after driving the blood is drawn."[49] The *Baker* court also considered the General Assembly's synopsis of section 4177(a)(5),[50] which explained that the four-hour window is "intended to protect the public from drivers who have consumed alcohol before driving, but

---

[40] 2006 WL 1719977 at *5 (Del. Com. Pl. Jun. 23, 2006).
[41] *Foskey* at *1.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at *4.
[46] *Re: State v. Baker*, 2009 WL 1639514 (Del. Super.) (Letter Op.).
[47] *Id.* at *2 (emphasis added).
[48] *Id.* at *1.
[49] *Id.*
[50] *Id.*

whose BAC levels have not yet met the proscribed level at the time of a stop."[51] The *Baker* court concluded that the "four-hour [window] is a sword, [and] not a shield."[52]

Building upon the *Baker* opinion, in *Thoroughgood v. State*, the Superior Court affirmed a jury verdict finding the defendant guilty of DUI.[53] The *Thoroughgood* court based its holding on the fact that there was ample evidence to support the jury's conclusion that the defendant drove within four hours of when the breath test was administered.[54] However, the *Thoroughgood* court added that the four-hour window is "not intended to be a defense for [a] defendant to avoid the results [of an untimely chemical test]."[55] The *Thoroughgood* court expressly discounted the notion of a four-hour rule and instead intimated that the policy-driven four-hour window was in close alignment with the spirit of the DUI statute.

The Delaware Supreme Court recognized that the General Assembly may promulgate rules affecting the admissibility of evidence. In *Anderson v. State* the Delaware Supreme Court addressed the issue of frequency of intoxilyzer calibration in relation to the admissibility of breath test results.[56] The Court held that there is no "bright-line rule . . . requiring calibration either monthly or every thirty days," and that if there is to be one for admissibility purposes, the "rule must, of necessity, come from the General Assembly."[57] The *Anderson* opinion implicitly acknowledged the import of General Assembly decisions to create rules respecting the admissibility of evidence.

---

[51] *Id.*

[52] *Id.* at *1 – 2.

[53] 2010 WL 2355316 at *3 (Del. Super.); It is unclear from the Opinion which subsection of the DUI statute defendant was found guilty of violating.

[54] *Id.*

[55] *Id.* at *4 (citing *State v. Baker* 2009 WL 1639514, at *1 (Del. Super.)).

[56] 675 A.2d 943 (Del. 1996).

[57] *Anderson*, 675 A.2d at 944.

10

## DISCUSSION

Like the *Anderson* court, this Court must not ignore the General Assembly's clear intent in promulgating a rule addressing chemical test timing. By enacting section 4177(g), the General Assembly chose to address this issue head-on. Section 4177(g) plainly states that chemical tests are relevant and admissible, including "the results from tests . . . taken within 4 hours after the time of driving *or at some later time*."[58] By its plain language 4177(g) permits introduction into evidence the results of chemical tests taken later than four hours after a defendant drove. Indeed, even the DUI *per se* statute appears consistent with this interpretation of section 4177(g) in that it requires the State to demonstrate what a defendant's BAC levels were at any moment within the four-hour window, and *not* that a chemical test was *administered* within four hours of when the defendant last drove.[59]

It is noteworthy that the General Assembly chose to incorporate a pliable four-hour window, in lieu of a rigid four-hour rule into the DUI statute.[60] The *Baker* and *Anderson* courts both looked to the General Assembly when considering the interplay between this State's rules of evidence and statutes; the analysis before this Court proves no different. The General Assembly, in section 4177(g) created a rule that chemical tests, whether taken within four hours after a defendant drove or at some time later, would be relevant and admissible, leaving it up to the trier of fact to determine how much weight to assign to the test results. Importantly, the General Assembly explained that the DUI statute's four-hour window accounted for the fact that a defendant's BAC level may not rise above .08 until after that defendant had stopped drinking

---

[58] 21 *Del. C.* § 4177(g).

[59] Section 4177(a)(5) requires the State to demonstrate that "a person's alcohol concentration is within 4 hours after the time of driving .08 or more," and not that a chemical test was administered within four hours of driving.

[60] 21 *Del. C.* § 4177(g).

11

and taken to the road.[61]  Therefore, the Court finds that in a DUI prosecution for general impairment, the result of a chemical test taken outside the four-hour window as set forth in section 4177(g) is admissible and relevant, but that the extent and nature of the delay will bear on the evidentiary weight assigned to such result.  The Court is confident that this approach is consistent with the General Assembly's intent, the Delaware Supreme Court's analysis in *Anderson*, and that a contrary approach would be decidedly inconsistent with how foreign jurisdictions have interpreted DUI statutes of similar construction.

In jurisdictions with similarly structured statutes chemical tests are typically admissible to prove a general impairment DUI if administered within a reasonable time, albeit subject to diminished evidentiary weight, when: (1) there is excessive delay; (2) a delay is caused by circumstances reasonably within the investigating officer's control; or (3) local rules or statutes otherwise so require.[62]

Unlike the defendants in *Fiori, Foskey,* and *Baker*, the State is prosecuting Hannon for a general impairment DUI in violation of section 4177(a)(1).  This section only requires proof that a defendant was driving while "under the influence of alcohol," a burden which can be met without evidence of a specific BAC level.[63]

Admitting the blood test results complies with the plain language of section 4177(g) as applied to the general impairment statute since Hannon's blood test was administered not within four hours of driving but "at some later time."  Moreover, the thirty-nine minute delay in Hannon's blood testing was minor when compared to that of admissible chemical tests, some of which were administered up to nine hours after driving.  Additionally, the circumstances surrounding the delay in obtaining the blood sample provide no indication that Trooper Johnson

[61] *Baker*, 2009 WL 1639514 at *1 (citing Del. H.B. 44 syn., 140th Gen. Assem. (1999)).
[62] *See Soli*, 479 N.W.2d 872, *supra*; *see also Miller*, 530 N.W.2d 652, *supra*; *see also Hala*, 358 P.3d 917, *supra.*
[63] 21 *Del. C.* § 4177(a).

unreasonably caused the delay. Trooper Johnson was dispatched to the scene of an accident where he first made sure to conduct a proper and safe accident investigation. Once Trooper Johnson cleared the accident scene, he began his investigation into the suspected DUI, during which investigation he was required to obtain a warrant for the blood draw. The record fails to show that Trooper Johnson was dilatory in his obtaining a warrant for Hannon's blood draw.

## CONCLUSION

For the foregoing reasons, the Defendant's **Motion *in Limine*** is **DENIED** with prejudice.

**IT IS SO ORDERED**.

The Honorable Carl C. Danberg,
Judge

13