**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

STATE OF DELAWARE,   )
           )
           )
           )
  v.        )  Case No. 2103013007
           )
           )
DARIO DAVIS,     )
           )
           )
  Defendant.    )

Submitted: March 24, 2022
Decided: April 29, 2022

Arqum Rashid, Esq.
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
 *Attorney for the State of Delaware*

Dario Davis
16 McCord Drive
Newark, DE 19713
 *Pro Se Defendant*

## DECISION AFTER TRIAL

Dario Davis ("Defendant") was arrested and charged on March 22, 2021, with the following offenses: Driving a Vehicle Under the Influence of Alcohol in violation of 21 *Del. C.* § 4177, Speeding in Excess of 55 mph on a 4-Lane or Divided Roadway in violation of 21 *Del. C.* § 4169, and Operating a Vehicle with Improper Window Tinting in violation of 21 *Del. C.* § 4313. Trial was held on March 24,

2022. The Court heard testimony from Corporal Stephen Douglas ("Douglas"), the arresting officer, and Defendant. At the conclusion of the trial, the Court reserved decision. This is the Court's Final Decision After Trial.

## FACTUAL AND PROCEDURAL HISTORY

At trial, Douglas testified as to the events surrounding Defendant's arrest as follows: Douglas was on a routine patrol traveling on Route 13 northbound when Defendant's vehicle passed him in the right lane going at a high rate of speed. Douglas clocked Defendant's vehicle going 115 mph in a 55 mph zone.[1] Once Douglas caught up to Defendant's vehicle, he activated his emergency lights and pulled the vehicle over. Defendant stopped the vehicle appropriately and promptly and pulled over without any obvious difficulty.[2] Upon contact with Defendant, Douglas noticed Defendant's eyes were glassy and bloodshot, and he detected an odor of alcohol. Douglas asked Defendant if he had consumed any alcoholic beverages and Defendant indicated in the affirmative. Defendant stated he had a can of something a friend had given him and two hard apple ciders.

Then, Douglas instructed Defendant to perform the ABC Test starting with D and ending with S, which Defendant failed to do properly.[3] Following the ABC

---

[1] The NVR recording captured Defendant's vehicle passing Douglas' patrol car at a high speed and shows Douglas' subsequent pursuit of Defendant's vehicle. St. Ex. 3.

[2] St. Ex. 3.

[3] Douglas instructed Defendant to say the alphabet starting with D and ending with S. Defendant started at A and ended with X at which he then stated he hadn't said his ABCs in a long time and repeated QRSTUXYZ.

2

Test, Douglas instructed Defendant to perform the Counting Test by counting backward from 86 to 70, which Defendant also failed to do properly.[4] Because Defendant was unable to properly perform the ABC Test and the Counting Test, Douglas asked Defendant to step out of the vehicle and perform the HGN Test, which Defendant agreed to do. This was captured on the NVR recording.[5] Douglas testified he was able to identify 6 out of 6 clues as Defendant performed the HGN test, which indicated a probability that Defendant's alcohol content was at or above .08. Douglas arrested Defendant and brought him to Troop 9.

Once at Troop 9, Douglas monitored Defendant for twenty minutes before administering the Intoxilyzer Test. Douglas testified that the intoxilyzer was working properly and accurately on the day in question evidenced by the certification sheets signed by the State Chemist both before and after the time Defendant was arrested.[6] After the monitoring period ended, Douglas administered the Intoxilyzer Test; the results showed Defendant had an alcohol concentration of .206.[7]

Defendant also testified at trial, but, he did not contest to the facts as presented by Douglas. Defendant did not deny he had told Douglas he had consumed alcohol

---

[4] Douglas instructed Defendant to count backwards from 86 to 70 and Defendant stated "86, 86, 85, said stop at 80 right, said stop where, 78, 86, 85, 84, 83, 82, 81, 80, 79, 78, 76, 77, 77, 76, 75, 74, 73, 72, 71".
[5] St. Ex. 3.
[6] St. Ex. 2.
[7] St. Ex. 4.

3

on the day he was arrested but claimed his breath smelled of alcohol because he is on a keto diet.[8] Further, Defendant stated that his keto diet could have impacted his Intoxilyzer Test results, but he did not provide evidence supporting such assertion.[9]

## LEGAL STANDARD

The State has the burden of proving each and every element of an offense beyond a reasonable double.[10] "A reasonable doubt is not a vague, impulsive or imaginable doubt, but such a doubt as intelligent, reasonable and impartial people may honestly entertain after a conscience consideration of the case."[11] A reasonable doubt "means a substantial well-founded doubt arising from a candid and impartial consideration of all the evidence or want of evidence."[12]

The Court, as the trier of fact, must assess the credibility of the witnesses and reconcile conflict if present in the testimony and "if reasonably possible, so as to make one harmonious story."[13] "The Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case."[14]

---

[8] Def. Ex. 1.

[9] After trial and subsequent to the closing of evidence, Defendant submitted a letter to the Court protesting his innocence and asserted arguments based upon "sovereign citizen" principles, which have been previously rejected by this Court. St. v. Owens, 2010 WL 5313506 at *5 (Del. Super. Nov. 8, 2010). As evidence was closed and briefing was not ordered, the letter, while read, will not be considered.

[10] St. of De v. Anderson, 2018 WL 3238456, *2 (Del. Ct. Comm. Pls. July 2, 2018).

[11] Id.

[12] Id.

[13] Id. at *3.

[14] Id.

4

Under Title 21 *Del. C.* § 4177(a)(1), "no person shall drive a vehicle . . . when the person is under the influence of alcohol."[15] Section 4177(a)(4) states "such person shall not drive a motor vehicle when the person's alcohol concentration is .08 or more."[16] To be found guilty under § 4177, the State must prove the defendant was under the influence of alcohol at the time of driving beyond a reasonable doubt.

Under Title 21 *Del. C.* § 4169, "where no special hazard exists, the following speeds shall be lawful, but any speed in excess of such limits shall be absolute evidence that the speed is not reasonable or prudent and that it is unlawful [for] all types of vehicles: . . . (5) 55 miles per hour on 4-lane roadways and on divided roadways".[17]

Under Title 21 *Del. C.* § 4313, "no person shall operate any motor vehicle on any public highway, road or street with the front windshield, the side windows to the immediate right and left of the driver and/or side wings forward of and to the left and right of the driver that do not meet the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of its manufacture".[18]

## DISCUSSION

Here, the State has established, through Corporal Douglas's testimony and the NVR recording, that Defendant was going 115 mph in a 55-mph zone and it was not

---

[15] 21 *Del. C.* § 4177(a)(1).
[16] 21 *Del. C.* § 4177(a)(4).
[17] 21 *Del. C.* § 4169(a), (a)(5).
[18] 21 *Del. C.* § 4313.

5

disputed by Defendant. Thus, the State has proved beyond a reasonable doubt that Defendant was speeding in excess of the legal speed limit in violation of 21 *Del. C.* § 4169.

Further, the fact that Defendant was speeding indicates Douglas had the necessary probable cause to stop Defendant's vehicle. Once stopped, Douglas noticed Defendant had glassy and bloodshot eyes, noticed an odor of alcohol, and Defendant admitted to consuming alcohol. This was also undisputed by Defendant.[19] Subsequently, Douglas asked Defendant to perform the ABC Test and the Counting Test, to which Defendant consented. Defendant performed poorly on these tests, which led Douglas to request Defendant to perform the HGN test, which again Defendant consented to do. Douglas noticed 6 out of 6 clues while Defendant performed the HGN test, indicating a probability that Defendant's alcohol content was at or above .08. The evidence, *i.e.* the speeding, odor of alcohol, bloodshot and glassy eyes, admission to drinking, and the HGN Test, is sufficient to establish there was probable cause to support administering the Intoxilyzer Test.[20]

---

[19] Defendant testified that his eyes were glassy and bloodshot due to allergies, however, did not present any evidence to support such an explanation. Further, Defendant testified and submitted photo evidence that he is on a keto diet. Defendant claimed being on a keto diet could have an impact on his breathalyzer test results but did not provide any expert testimony to prove such an assertion. The Court did perform a limited search on the issue and did not discover any case law to support Defendant's position. There was some research suggesting a keto diet could have an impact on a breathalyzer reading; however, this research did not suggest a keto diet could take a .079 BAC (the legal limit) and elevate the BAC to a reading of .206 (more than two and half times the legal limit).

[20] *Miller v. State*, 4 A.3d 371 (Del. 2010).

The Delaware Supreme Court has stipulated that two certificates by the State Chemist, which indicate the intoxilyzer was working properly and accurately before and after the incident in question, must be submitted before the results of the intoxilyzer test can be entered into evidence.[21] If both certifications are completed properly, then the intoxilyzer is presumed to have been working properly on the day in question unless there is some evidence to support that the machine was not working properly on such day.[22]

Here, the State has submitted the necessary certification sheets signed by the State Chemist from before and after Defendant's arrest.[23] The certifications indicate the intoxilyzer was working properly and accurately.[24] There has not been any evidence submitted suggesting the intoxilyzer was not working properly on the day in question, thus the Court concludes the intoxilyzer was working properly.

Douglas monitored Defendant for the mandatory 20-min observation period before administering the intoxilyzer test, which was not disputed by Defendant. The intoxilyzer report indicated Defendant had an alcohol concentration of .206. Delaware law states it is a violation of 21 *Del. C.* § 4177 to drive a vehicle above a .08 alcohol concentration. Thus, the State has proved beyond a reasonable doubt that Defendant did violate 21 *Del. C.* § 4177.

---

[21] *State v. Anderson*, 675 A.2d 943 (Del. Super. Oct. 14, 2010).
[22] *Id.*
[23] St. Ex. 2.
[24] *Id.*

At trial, the State abandoned the charge related to improper tint. Therefore, the Court dismissed this charge at the close of evidence.

**CONCLUSION**

For the reasons discussed above, the Court finds:

1. Defendant is found **GUILTY** of violating 21 *Del. C.* § 4169 when he did operate a motor vehicle at a greater speed than was reasonable and prudent in that he did operate said motor vehicle at a rate of 115 mph in a 55-mph zone.

2. Defendant is found **GUILTY** of violating 21 *Del. C.* § 4177 when he drove a motor vehicle upon a public highway or real property when he was under the influence of alcohol.

3. The Court **DISMISSED** the charge of violating 21 *Del. C.* § 4313 for operating a vehicle with improper window tinting.

The matter will be scheduled for sentencing before this judicial officer.

**IT IS SO ORDERED** this 29th day of April 2022.

The Honorable Carl C. Danberg<br>
Chief Judge

cc:    Latoya Allen, Judicial Case Manager